## BURTON *et al. vs.* BLACK.

1. A party who is not only present and acquiescing in what is being done, but for a valuable consideration procures another to convey away his property, will be bound by the conveyance, as if it were his own act.
2. The allegations in a bill of interpleader, that two persons are claiming of the complainant the same property; that he has no interest in it; knows not to whom he ought, of right, to deliver it; is colluding with neither, and fears he may suffer injury from their conflicting claims; and that they are molesting him with separate suits, are sufficient to sustain the bill, and authorize an injunction and order to interplead.
3. Such a bill would be made still stronger by a showing that one of the conflicting claims is legal, and the other equitable.

In Equity, in Schley Superior Court. Decision on Demurrer, made by Judge WORRILL, at Chambers, on the 18th of December, 1860.

The question presented by the records, in these two cases, being the same, the cases were heard together, and rest upon the following state of facts:

On the 18th day of July, 1846, Mrs. Eliza Smith executed her last will and testament; by the first three items of which she gave directions as to her burial, and disposed of three negroes by specific bequests.

The fourth and fifth items of the will are in the following words, that is to say:

" All the balance of my property, of every description, lands, negroes, stock, utensils, furniture, bedding, and every thing I possess, I give, bequeath and devise to my son, Benjamin Burton, after the payment of my just debts; for the purpose of which payment of my debts, I give unto him notes now held by me. 5th, Should my son, Benjamin Burton, die without children, it is my will, and I do hereby (in the event of the death of my son Benjamin, without children,) give, bequeath and devise all of my property, of every description, which shall be found remaining at the death of my son Benjamin, together with all the increase that may arise therefrom, to my son, Robert Burton, and his heirs forever."

Afterwards, the testator died, leaving this will in full force, and the same was duly proven and recorded, according to law.

By virtue of said will, the said Benjamin Burton became possessed of the property bequeathed to him as aforesaid, of which, with the increase thereof, there are now living the following-named negroes, to-wit: Cæsar, Nancy, Phiny, Charles, Mercy, Betsy, Katy, Marshall, Victoria, Cora, Ben, Billy, Emory, Sarah, Lize, Allen, Patty, Stephen, Christian, Amelia, Milton, Elbert, Nancy, Rhiner and Jordan.

The said Benjamin Burton intermarried with one Virginia Pinckard, and, by virtue of a deed of marriage-settlement, made between them, William A. Black was appointed trustee of said property, and of other property of the said Benjamin Burton.

In process of time Burton and his wife became dissatisfied, and desired the said Black to be removed from his trusteeship, and another trustee appointed in his stead, in order that the said Burton and his said wife might remove with said property to the State of Florida, which removal they then had in contemplation.

Robert Burton, hearing of the desire to change the trustee, and of the contemplated removal of the said Benjamin and his wife, with said property, out of the State, and being much opposed thereto, on account of the contingent interest which he had in said property, proposed to the said William A. Black the terms of an agreement and contract, which was evidenced by Black executing and delivering, to the said Robert Burton, his bond, in writing, for the sum of $25,000, conditioned to be void if the said Black should resist and oppose the change of trustee aforesaid, and continue to hold on to said trust, and manage said property, and have the same forthcoming upon the death of the said Benjamin, without children, to be delivered to the said Robert; and by the said Robert Burton, also, on his part, executing and delivering to the said William A. Black his bond, in the like sum of $25,000, conditioned to be void, if the said Robert should divide the said property equally with the said Wil-

liam A. Black, upon the death of the said Benjamin without children.

In compliance with the terms of said agreement, the said Black did resist and oppose the said change of trustee, and did hold on to the trust, and did continue to manage the property, in accordance with said agreement.

Sometime thereafter, Benjamin Burton became extravagant, and ran largely and unnecessarily in debt, and the said Robert Burton again sought an interview with Black, and it was agreed between them that, in order to control Benjamin Burton in his extravagance, and in order to preserve the property from waste, and in consideration that the bonds executed and interchangeably delivered by Black and Robert Burton, should be canceled, that Benjamin Burton should be induced to confide the property more thoroughly to Black, and for this purpose, and to accomplish these objects, (all three of the parties being present, and participating in the same,) Benjamin Burton, on the 22d day of February, 1856, made a deed of conveyance to the said William A. Black, of which the following is a copy, that is to say :

" GEORGIA, MARION COUNTY :

"This indenture, made and entered into this 22d day of February, 1856, between Benjamin Burton, and William A. Black, both of said county, witnesseth : that the said Benjamin Burton, for and in consideration of repeated and continued acts of labor, care and diligence, done, performed, and bestowed by the said William A. Black, and for the further consideration of securing the care, vigilance, skill and diligence of said William A. Black during my natural life, in and about my business and property, and to prevent loss or damage by waste, mismanagement, imprudence, or want of skill, on the part of unfaithful agents, hath granted, bargained, aliened, conveyed and sold, and by these presents grant, bargain, alien, convey, and sell unto the said William A. Black, his heirs and assigns forever, all the negroes and their increase, that were bequeathed to me by my mother, Mrs. Eliza Smith, late of Talbot county, deceased, the same

being now in the possession of the said William A. Black, names as follows : [*here followed the names of the negroes*] to have and to hold said negroes, and their issue, and increase forever, upon the special trusts and confidence following, that is to say : to sell said negroes for cash, or on reasonable credit, as soon as a fair market price can be obtained, at public or private sale, or hire out the negroes from year to year, as he may deem best, and pay and apply .the proceeds of said sale (if sold) as follows—that is, in State bonds of the State, or some good marketable bonds, or in some safe dividend-paying stock, and pay the interest, in corn, or hire, as the case may be, annually or semi-annually, as the case may be, to the said Benjamin Burton, during his natural. life, and at, and from immediately after his death, this trust to cease, and the corpus of said property, if unsold, or the stocks, bonds, or other property, in which the proceeds of the sale may be invested, to be disposed of as follows, to-wit : one full share or half, to the children of William A. Black then living, and to the lineal descendants of such child or children, in case any one of them be dead leaving children— such child or children to take in the place of the deceased parent—such part or share as may fall to the daughters of William A. Black respectively, to their sole and separate use respectively, during their respective natural lives, and then to their children respectively. The other one-half or share to my brother, Robert Burton and his children, his and their heirs and assigns forever.

"In witness whereof, the said Benjamin Burton hath hereunto set his hand and seal, the day and date first aforesaid."

· BENJAMIN· BURTON.    [L. S.]

Signed sealed and delivered in the presence of

L. C. BARETT.

W. J. MAY, *Notary Public.*

· This deed was duly executed by the said Benjamin Burton, and was handed to Robert Burton to be recorded, and the bonds of the said Black, and the said Robert Burton herein before mentioned, were then mutually re-delivered.

Under this deed, William A. Black continued to hold pos session of the property, and managed the same under the trusts, and for the purposes mentioned in the deed, until the death of Benjamin Burton, on the 25th of January, 1859.

Immediately after the death of Benjamin Burton, William A. Black notified Robert Burton, in his own behalf, and in behalf of his children, to-wit: Homer V. Burton, Clara Burton, and Ella Burton, who were then minors, and also notified the children of William A. Black, to-wit: William T. Black, Eliza C. Black, Matilda J. Black, Nannie J. Black, Oliver D. Black, Susan A. Black, James M. Black, Lucy V. Black and Bell B. Black, (the six last named being minors,) all of whom were living at the time the deed was made by Benjamin Burton, and are now in life, that his said trust had ceased, and that he was willing and ready to turn over, and deliver said property to them, and execute such conveyances as were necessary to carry out the provisions of said deed, and to give it full effect.

To avoid future litigation, and under professional advice, Black executed a deed of conveyance for said property to his own children, and to Robert Burton and his children, in exact accordance with the terms and trusts of the deed from Benjamin Burton, although he believed that the trust ceased at the death of Benjamin Burton.

Black hired out the negroes during the years 1859 and 1860, for the aggregate gross sum of $1,551 67.

Robert Burton, repudiating, so far as he was concerned, the stipulations of the deed from Benjamin Burton, and resting his claim on the said will of his mother, Mrs. Eliza Smith, (said Benjamin Burton, having died without children,) commenced his action of trover in Schley Superior Court, against William A. Black, for the recovery of all the negroes, and their hire, since the death of Benjamin Burton.

The children of William A. Black, also commenced a proceeding in equity, by bill in Schley Superior Court, against the said William A. Black, and Robert Burton, and the said children of Robert Burton, praying a division of the negroes and their hire accruing subsequent to the death of Benjamin

Burton, between them and Robert Burton, in accordance with the terms and stipulations of the deed from Benjamin Burton to William A. Black, hereinbefore set forth.

William A. Black answered the bill, in which the foregoing facts are alleged and admitted by him ; and Robert Burton and his children, by ʿa guardian *ad litem* appointed by the Chancellor, demurred to the bill for want of equity.

Under these circumstances, and whilst said action of trover and said bill in equity were both pending and undetermined, William A. Black filed his bill in equity, in Schley Superior Court, against the said complainants in the aforesaid bill, and against Robert Burton, the plaintiff in said action of trover, and against the said children of Robert Burton, in which he alleges the facts herein before stated, and also that he has the negroes and their hire in his possession ; that he sets up no claim to the same ; that he is ready to deliver the said negroes and pay the hire to whomsoever the Court may, by decree, adjudge them to belong ; that he has not colluded with either of the parties, but files this bill for his own protection and security alone.

The bill prays that the parties may be compelled to interplead, and litigate their rights in the premises ; that a Receiver may be appointed to take charge of the property pending the litigation ; that the action of trover, and the suit in equity may both be enjoined until the hearing of this bill, and that the said William A. Black may have such other relief as the circumstances of the case justify and demand.

The injunction was granted as prayed for in the bill, after argument had thereon, on the 18th of December, 1860, and on the same day, after like argument had, the demurrer to the bill in favor of the children of Black was overruled.

These decisions, granting the injunction in the one case, and overruling the demurrer in the other, are the errors complained of in the records.

L. B. SMITH, for the plaintiffs in error.

B. HILL, for the defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

Two questions arise under this bill of exceptions.

1st. Is Benjamin Burton's deed, of the 22d February, 1856, under which the claim of William T. Black *et al.* (set forth in their bill,) arises, binding upon Robert Burton?

2d. If it be so, is this a case for interpleader? If the first question be decided affirmatively, the judgment of the Court below overruling the demurrer to the bill of Wm. T. Black *et al.* vs. Wm. A. Black *et al.* must be affirmed. It will then become necessary to examine the second question; if that be also determined affirmatively, the judgment of the Court enjoining the action of trover by Burton vs. Wm. A. Black, and the bill of Wm. T. Black *et al.* must likewise be affirmed. But if the first question be settled negatively, each of said judgments must be reversed.

Counsel for plaintiffs in error insist that Robert Burton is not bound by the deed of Benjamin Burton, because the latter had only a life estate in the property, and could not convey the remainder, which, by the will of Mrs. Eliza Smith, (the mother of both, from whom Benjamin derived title,) rested in Robert; and that all that Robert had said or done, to divest himself of this remainder or any portion of it, rested in parol, which was insufficient to execute an estate in remainder.

He cites Kirkpatrick vs. Davidson, 2 Geo. R., 301–2, and Maxwell vs. Harrison, 8th Geo. R., 61.

These cases do affirm the rule, that a remainder in chattels cannot be created by parol. In those cases, the remainders attempted to be set up, and disallowed by this Court, rested entirely in parol.

The case at bar depends upon a very different principle. There is no attempt made to set up, in Wm. T. Black and others, a parol gift in remainder. They claim under the deed of Benjamin Burton, above mentioned. The question for the plaintiff in error to meet, is not whether a parol gift of slaves in remainder after a life in being, made by *him*, is binding upon him. It is whether or not, under the facts of this case, he is bound by the deed of Benjamin Burton. The

facts are that Robert Burton had, in the slaves in dispute, a contingent remainder, depending upon the death of Benjamin Burton, without children surviving him. Benjamin, upon his marriage, settled his interest in this property upon his wife, making Wm. A. Black the trustee. After this, and whilst still childless, he desired to have the trustee changed, with a view of enabling him to remove the property from the State of Georgia; which purpose we may presume the *then* trustee opposed. Before anything definite was done, the plaintiff in error, alarmed by the peril in which his contingent interest would be placed, by such change of trustee, and removal of the property, opened a negotiation with Black, the trustee, the result of which was that Black bound himself *to Robert Burton*, to resist any change of trustee attempted, and to prevent, if possible, the removal of the property, and in consideration thereof, *Robert Burton* bound himself to Black, to convey to him, Black, one-half of the property in question, which might thereafter come to him, upon the death of Benjamin Burton. This agreement did not rest in parol. Each party to it, executed and delivered to the other, a bond in the sum of $25,000, conditioned to be void, upon the performance by the obligor of his part of the agreement, as above stated.

Here, then, by an instrument in writing, under seal, with a sufficient consideration, the interest of Robert Burton in this property was materially changed. Black acquired a contingent, equitable interest, to the extent of one-half. Black complied, on his part, with the agreement. He retained the trust and prevented the property from being removed.

Still, however, the bad management of Benjamin Burton, his improvidence, and extravagance, and his great liability to be imposed upon by sharpers, rendered Robert Burton uneasy—apprehensive as to the security of his contingent interest. Again he approached Black, the trustee, and conferred with him as to the best mode of securing their prospective interest in the property, as well as for the purpose of making it more available for the support and maintenance of Benjamin Burton. The result of this second negotiation,

also instituted by Robert Burton, was an agreement, that with the consent of Benjamin Burton, (if it could be procured) he, Benjamin Burton, should execute just such a deed as was subsequently executed, that Black should, in pursuance of it, take the actual possession, and the entire control of the property, preserve it from waste, and make it productive; and the bonds theretofore executed and delivered by Black and Robert Burton, the one to the other, should be re-delivered and canceled.

Accordingly upon their joint suggestion and advice, and whilst they both were present, and giving full assent to all that was done, Benjamin Burton executed the deed of 24th February, 1856, and it was then delivered to, and received by Robert Burton for the purpose of being recorded. The bonds previously interchanged by and between Robert Burton and Black, were at the same time, severally surrendered, each to the obligor therein. Black faithfully performed his trust, taking care of, and discreetly managing the property, until the death of Benjamin Burton, when this litigation ensued.

It would inadequately express the relation which the plaintiff in error bore to this transaction, to say that he stood by and acquiesced in Benjamin Burton's disposition of his contingent interest in remainder. He did more, he first conceived the act, then procured the consent to it of Black, whom he had previously made a party in interest; then, with the assistance of Black, he obtained the consent of Benjamin Burton, to carry into effect *his will*, touching the remainder in the property, and was present, participating in, (we may safely add) directing what was done, and finally received the deed for the avowed purpose of having it recorded. Again, he took an interest under the deed—still again, he received a valuable consideration from Black, viz: his obligation, upon a future contingency to convey one-half of this property to Black, was canceled and surrendered. He was, in this whole affair, the prime-mover, the controlling spirit. He willed, and he caused Benjamin Burton to execute his will. It was in fact, Robert Burton signing and sealing, with the hand of

Benjamin Burton.  Having secured, by this arrangement, the cancellation, and surrender of his bond to Black, which was a valid and binding executory contract, shall he be permitted now to repudiate the settlement, and recover the whole of this property under the will of his mother ?

I have said that this case was governed by a different rule, than that under which counsel for plaintiff seeks to bring it. It is this, that a party who is not only present and acquiescing in the act, but for a valuable consideration, procuring another to convey his property, will be bound by the conveyance, as if it were his own act.

The cases of White *et al.* vs. Dinkins, 19 Geo. R., 286, and Wyche *et al.* vs. Green *et al.*, 26 Geo. R., 416, neither of which has so strong a foundation, in fact fully sustain this ruling.  This disposes of the first question.

As to the second question, whether in the bill of Wm. A. Black vs. Robert Burton, Wm. T. Black *et al.*, a proper case for interpleader has been made, we think there is no difficulty.

The general doctrine is, that interpleader lies, " where two or more persons claim the same thing, under different titles, or in separate interests, from another person, who, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the duty claimed, or to deliver the property claimed, is either molested by an action or actions brought against him, or fears he may suffer injury, from the conflicting claims of the parties against him.  He therefore applies to a Court of Equity to protect him, not only from being compelled to pay or deliver the thing claimed, to both the claimants, but also from the vexation attending upon the suits, which are, or possibly may be instituted against him."  2d Story's Equity Jur. sec. 806.

The complainant in this case, claims no interest in the property.  He avers, and verifies the averment, that he is in collusion with neither party claiming.  Those parties claim by different titles—he knows not to whom he ought to deliver it—he fears that he may suffer injury from their conflicting titles—both parties are actually molesting him with separate

suits, from the vexation and expense of which he seeks to be delivered.

Again, one of the titles is legal and the other equitable, which are now pressed against him, which is a sufficient foundation for the jurisdiction.    2d Story's Equity Jur. sec. 808.

Such is precisely the case here.    One of the parties is pursuing him at law under a title derived by the will of a stranger.    The other is claiming the property by bill in equity, insisting that he holds the property as trustee, and that by one of the provisions of the trust deed, it is his duty to deliver the property, or a portion of it, to them.    We entertain no doubt that it is a case for interpleader, and we therefore affirm the judgment of the Court below in each case.

Judgment affirmed.