[No. 1632, February 12, 1914.]

THE BOWMAN BANK & TRUST COMPANY, a corporation, Appellee, v. THE FIRST NATIONAL BANK OF ALBUQUERQUE, a corporation; THE REGENTS OF THE NEW MEXICO COLLEGE OF AGRICULTURE AND MECHANIC ARTS, Appellants.

## SYLLABUS (BY THE COURT)

1. In an interpleader suit, the amount due cannot be the subject of controversy, and where such controversy exists it presents an insuperable objection to its prosecution.

P. 598

2. Where a party, holding a certificate of deposit issued by a bank, is entitled to collect the same, and makes demand upon the bank for its payment, which is refused, he becomes entitled, as a matter of law, to interest on the deposit, at the statutory rate, from the time of such demand. In such case ,where suit is brought against the bank to recover the amount of such certificate and interest thereon from the time demand was made, the bank cannot interplead and pay the money into court, and escape liability, unless it tenders the sum which the plaintiff is entitled to recover at the time the tender is made, should it prevail.

P. 598

3. Where a demurrer is interposed and sustained to an answer and interpleader, and the interpleading defendant thereupon takes leave to answer, and by his answer filed, pursuant to leave granted, takes issue with plaintiff upon the merits, and abandons his impartial attitude assumed in his interpleader, and takes up the cudgel for the other claimant of the fund, he thereby waives his interpleader, and can-

not predicate error upon the action of the court in sustaining the demurrer.

P. 599

4. An incumbent in office is not ousted by the mere election or appointment of his successor, where the statute requires such official to qualify for the office by doing certain acts; his right to the office not being complete until he has qualified for the same as directed.

P. 601

5. Where the statute creating a board of regents for the Agricultural College and Experiment Station provides for the election of one of the members of said board as secretary and treasurer, and also provides that such secretary and treasurer shall continue in office until his successor shall be elected and qualified, the incumbent is not ousted from the office of secretary and treasurer by the appointment of a new board of regents, but continues as such until a new secretary and treasurer has been elected and has qualified as directed by the statute.

P. 602

6. The treasurer of such board, in the absence of direction from the board of regents ,assuming the power of such board so to do, has the right to reposit the funds in his hands in such bank or banks as he chooses, and to withdraw such funds at his pleasure, being liable, of course, at all times under his bond "to account for and pay over to the person or persons entitled thereto" such moneys.

P. 603

Appeal from the District Court of Dona Ana County; Edward L. Medler, District Judge; affirmed.

A. B. McMILLEN, Albuquerque, N. M., for appellants.

Appellant's interpleader complied in every respect with the requirements of law, and the facts show a proper case for interpleader, and the court was in error in refusing to

permit appellant to pay the amount of the certificate of deposit, with interest, into _ court.    Puterbaugh's Ch. Pleading, p. 279, and authorities cited; Story Eq. Pleading, sec. 291, and cases cited; Louisiana State Lottery Co. v. Clark, 16 Fed. 20; McWhirtes v. Halstead, 24 Fed. 828; Griggs v. Thompson, 1 Ga. Dec. 146; Strange v. Bell, 11 Ga. 103; Adams v. Dickson, 19 Ga. 513, 65 Am. Dec. 608; Barton v. Black, 32 Ga. 53; Davis v. Davis, 96 Ga. 136, 21 S. E. 1002; National Park Bank v. Lanahan, 60 Md. 477; Monks v. Miller, 13 Mo. App. 363; Orr Water Ditch Co. v. Larcomb, 14 Nev. 53; Farley v. Blood, 30 N. H. 354; Mt. Holly Turnpike Co. v. Ferree, 17 N. J. Eq. 117; North Pac. Lbr. Co. v. Lang, 28 Ore. 246, 52 Am. St. R. 780; Greene v. Mumford, 4 R. I. 313; Wabash Ry. Co. v. Flannigan, 95 Mo. App. 477, 75 S. W. 691; Nixon v. Malone, 95 S. W. 577; Woodmen of the World v. Wood, 100 Mo. App. 655; School District v. Weston, 31 Mich. 85; Board of Education v. Scoville, 13 Kans. 17; Nat. Iivestock Bank v. Platte Valley St. Bank, 54 Ill. App. 483, 155 Ill. 250.

This applies with particular force to money in bank or other depository. City Bank of N. Y. v. Skelton, Federal Cases No. 2739, 2 Blatch. 14; Foss v. First National Bank, 3 Fed. 185; James v. Sams, 90 Ga. 404, 17 S. E. 962; Livingstone v. Bank of Montreal, 50 Ill. App. 562; People's Savings Bank v. Look, 95 Mich. 7, 54 N. W. 629; Wayne Co. Savings Bank v. Airey, 95 Mich. 520, 55 N. W. 355; Fletcher v. Troy Savings Bank, 14 How. 383; Smith v. Emigrant Industrial Sav. Bank, 2 N. Y. Supp. 617; Harrisburg Nat. Bank v. Hiester, (Pa.) 2 Pears. 255; Dickeschief v. Exchange Bank, 28 W. Va. 340; Harris Bank. Co. v. Miller, 190 Mo. 640; Wells v. Com. Ex. Bank, 87 N. Y. S. 480; Helene v. Com. Ex. Bank, 89 N. Y. S. 310; Continental Sav. Bank v. McClure, 104 Tenn. 607, 58 S. W. 240.

In case of interpleader the stakeholder is entitled to his costs and to the allowance of a reasonable attorney fee. Morse v. Stearns, 131 Mass. 389; Christian v. National I. Ins. Co., 62 Mo. App. 35; Franco-American Loan, etc., Assn. v. Joy, 56 Mo. App. 433; German Ex. Bank v. Ex-

cise Commissioners, 6 Abb. N. Cas. 394; Daniel v. Fain, 5 Lea. 258; Stevens v. Germanis L. Ins. Co., 26 Tex. Civ. App. 156, 62 S. W. 824; Bolin v. St. Louis, etc., Ry. Co., (Tex. Civ. App.) 61 S. W. 444; Florida Internal Imp. Fund v. Greenough, 105 U. S. 527; La. State Lottery Co. v. Clark, 16 Fed. 20; McCall v. Walter, 71 Ga. 287; Glasser v. Priest, 29 Mo. App. 1; McNamara v. Prov. Sav. O. A. Co., 114 Fed. 910; Loring v. Thorndike, 87 Mass. 257; Nixon v. Malone, 95 S. W. 577.

Vincent B. May, even while secretary and treasurer, had no lawful power to negotiate and deal in bills payable and other securities of the New Mexico College of Agriculture and Mechanic Arts. C. L. 1897. sec. 3553; Id., sec. 3556; Id., sec. 3575; Cook on Corporations, sec. 717, and cases cited.

Upon the appointment of the new board of regents, the sole duty of Vincent B. May was to turn over the funds to his successor. Conklin v. Cunningham, 7 N. M. 486, 38 Pac. 170; Eldodt v. Territory, 10 N. M. 141, 61 Pac. 107; C. L. 1897, sec. 3574.

WADE & WADE, Las Cruces, N. M., for appellee.

Defendant bank was not entitled to its costs and attorneys' fees in view of its conduct. 11 Enc. Pl. & Pr., 480-1

The fund in question was under May's control. He could deposit it in any bank he saw fit. C. L. 1897, sec. 3574; Maloy v. Board of Co. Comm'rs., 10 N. M. 638; C. L. 1897, sec. 3556.

May was treasurer until his successor qualified. He had full power to demand and receive payment of the certificate of deposit. C L 1897. sec. 3574

### STATEMENT OF FACTS.

On July 17, 1911, Vincent B. May was the duly elected, qualified, and acting treasurer of the board of regents of the New Mexico College of Agriculture and Mechanic Arts, and under bond to account for all moneys coming into his hands as such official. On said day he had in his

hands, of the permanent funds of said institution derived from lands sold, theretofore granted the State by the United States government, for the use of said institution, (Act June 21, 1898, c. 489, 30 Stat. 485) the sum of $21,-656.76, which he deposited with the Bank of Commerce of Albuquerque, receiving from said bank the following certificate: "The Bank of Commerce of Albuquerque, $21,-656.76. Albuquerque, N. M., July 17, 1911. Vincent B. May, Secy. & Treas., has deposited in this bank twenty-one thousand six hundred fifty-six dollars and 76-100 dollars payable to his order on the return of this certificate properly endorsed. This certificate is payable six or twelve months after date with interest at five per cent. per annum for a stated period only. No interest after maturity. F. R. Harris, A. Cashier. Certificate of deposit not subject to check" The appellant First National Bank of Albuquerque thereafter took over the business of said Bank of Commerce and assumed the liability on said certificate.

On July 5, 1912, said Vincent B. May, purporting to act as secretary and treasurer of said board of regents, in dorsed over to the appellee bank said certificate of deposit, taking in exchange therefor a certificate of deposit issued by said appellee bank; the purpose of the action being to secure an advancement from the appellee bank of the interest to become due on said certificate from the appellant bank on July 17th, for the purpose of providing funds to meet some outstanding accounts, or to protect an overdraft representing money advanced by appellee for such purpose.

On June 11th, preceding, an entire new board of regents of said institution was appointed by the Governor of the State, consisting of Morgan O. Llewellyn, James H. Paxton, Francis E. Lester, A. H. Hudspeth and Hiram Hadley; but said board did not meet, organize, and the members assume their duties until the forenoon of July 5th. At that time James H. Paxton was elected president and Morgan O. Llewellyn was elected secretary and treasurer; but said Llewellyn did not qualify as treasurer, by executing the necessary bond, until some time in August thereafter.

On July 9, 1912, Morgan O. Llewellyn, sent appellant

the following telegram, which was received by it: "Las Cruces, N. M., July 9, 1912. First National Bank of Albuquerque, N. M. You are instructed not to pay out any moneys on deposit belonging to New Mexico College of Agriculture & Mechanic Arts except upon the order of M. O. Llewellyn, secretary and treasurer of the board of regents. Money was deposited with Bank of Commerce [Signed] M. O. Llewellyn, Secretary and Treasurer Board of Regents."

On July 17th, the above certificate of deposit was presented to appellant for payment for the account of plaintiff. Whereupon appellant notified said Llewellyn and received a second telegram from him, directing the bank to refuse payment and notifying appellant bank he had suc·ceeded May as secretary and treasurer on the 5th inst. Appellant bank thereupon refused payment and notified Llewellyn that it held the certificate pending an adjustment of the matter, and further stated that it desired to avoid any complications in connection with the transaction.

No further action was taken by any of the parties connected with the transaction, until, on the 7th day of October, 1912, the appellee filed its complaint in the District Court of Dona Ana County against the appellant to recover the amount due on said certificate of deposit, principal and interest, on July 17, 1912, and interest on said sum at the rate of 6 per centum per annum from said date until said money should be paid. Thereafter, on the 4th day of November, appellant filed its answer and interpleader, setting up the controversy between the College and its officers on the one hand and the appellee on the other; the notice not to pay; its efforts to adjust the matter; its readiness and willingness to pay; that it had no interest in the controversy or the success of either party thereto; that it could not safely pay appellee over the objection of the secretary and treasurer of said board, and tendered into court the amount of said certificate, together with the stipulated interest thereon to July 17, 1912, to abide the order of the court. But appellant did not tender or offer to pay the interest and damages claimed

by appellee in its complaint by reason of appellant's refusal to pay said certificate of deposit upon its demand made July 17th, when the same became due and payable. The answer and interpleader further alleged that the interpleader was not filed by collusion with either of the claimants to said deposit, and prayed that the board of regents be made parties and required to interplead with plaintiff; that upon payment of said amount tendered into court that appellant be discharged and recover its costs, together with reasonable attorney's fee; and that the appellee be enjoined from further prosecuting its suit against appellant. To this answer and interpleader plaintiff demurred upon several grounds; one being as follows: "That the tender by the defendant to pay into court moneys stipulated to be paid in and by the said certificate of deposit is not sufficient in this, that it does not cover the full liability of the defendant to the plaintiff in the event that the plaintiff shall prevail." The demurrer was sustained generally and the order sustaining the same recites that: "The defendant electing to stand upon the facts as alleged in said interpleader, it is ordered by the court that said interpleader be and the same is hereby dismissed, to which said ruling and order of the court defendant excepts. It is further ordered that the defendant be allowed to file an amended answer and to otherwise plead or defend against the action set forth in plaintiff's complaint as it may be advised." Pursuant to the leave given, appellant filed an answer to the merits, denying any right whatever in appellee to recover the money represented by said certificate of deposit; alleging that it held the fund, subject to the order of the New Mexico College of Agriculture and Mechanic Arts, through its secretary and treasurer; that the transfer of the certificate by Vincent B. May to appellee, as secretary and treasurer, was without value received; and that appellee was not a bona fide holder thereof. The answer further alleged that Vincent B. May had ceased to be a member of the board of regents, and the secretary and treasurer thereof, at the time he transferred the certificate of deposit to appellee, and that at that time he had no right to control said fund or to

indorse said certificate. To this answer a reply was filed
by appellee denying all the material allegations of the an-
swer, but admitting that appellant had received the notices
from M. O. Llewellyn not to pay said certificate of de-
posit upon the order of Vincent B. May. Upon motion
the board of regents of said College were permitted to in-
tervene and become parties to said suit. An answer to the
appellee's complaint was filed by the board, in which it al-
leged that the funds in controversy belonged to the per-
manent fund of said College, and as such was subject to
the control of the board of regents; denied that May had
any authority to indorse said certificate of deposit; alleged
that he had ceased to be a member of the board of regents
at the time of his attempted transfer of the fund, and
that he had likewise ceased to be the secretary and treas-
urer of said board. To this answer appellee filed a reply,
denying all the material allegations of the answer.

Upon the issues thus framed, the evidence was heard by
the court, findings of fact made, and conclusions of law
stated. The facts so found were in accord with the facts
stated by this court and need not be repeated. Upon the
facts found, conclusions of law were stated by the court as
follows: "(1) That at the time of the transaction be-
tween the plaintiff and Vincent B. May, and at the time
of the maturing of the certificate of deposit, the said Vin-
cent B. May was responsible under his official bond for
the safe-keeping of the funds under consideration and lia-
ble to account therefor and was the proper custodian there-
of and authorized to determine the bank or other place in
which the same might be kept on deposit; and that while
the said Vincent B. May was not required to keep the
said funds on interest upon a certificate of deposit in the
absence of a specific direction from the said board of re-
gents, his having done so, and the said Agricultural Col-
lege having received the benefit of such interest, the board
of regents is now estopped from complaining. (2) That
the said M. O. Llewellyn did not become qualified to take
over the funds under consideration, or otherwise perform
the duties of secretary and treasurer of the board of re-
gents of the Agricultural College of New Mexico until on-

or after the 21st day of August, A. D. 1912, and had no
power or authority to direct the disposition of the funds
in question at the time he undertook so to do.    (3) That
the intervening petition of the regents of the Agricultural
College of New Mexico should be dismissed.    (4) That the
plaintiff is entitled to recover of and from the defendant
bank the sum of $21,656.76, with interest thereon at the
rate of 5 per cent. per annum from the 17th day of July,
A. D. 1911, to the 17th day of July, A. D. 1912, and with
interest thereon at the rate of 6 per cent. per annum from
the 17th day of July, A. D. 1912, to this date, together
with its costs to be taxed." Judgment was entered in ac-
cordance with the conclusions of law stated, from which
judgment the First National Bank of Albuquerque and
the board of regents appeal.

## OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above).—
The first alleged error is predicated upon the action of
the court in sustaining the demurrer to the answer and
interpleader of the First National Bank of Albuquerque.
As shown in the preceding statement of facts, one ground
of the demurrer was that the tender was insufficient to
cover the full liability of the appellant bank to the appel-
lee in the event the appellee should prevail.    If the de-
murrer was well taken on this ground, no error was com-
mitted in sustaining it.

In its complaint the appellee set forth facts, which, if
true, entitled it to recover not only the face value of the
certificate of deposit and interest thereon from July 17,
1911, to Juyl 17, 1912, but interest on said sum at the
rate of 6 per cent. per annum from the time of its demand
upon appellant bank for the payment thereof, which was
July 17, 1912, to the time the same was actually paid or
judgment therefor entered. If, in fact, appellee was law-
fully entitled to the money, it was entitled to interest
thereon from the time of its demand upon the bank for
payment and its refusal to pay. and this, as a matter of
law. At the time appellant filed its interpleader, if ap-
pellee was entitled to recover, there was due it from the

appellant bank, as interest, more than $400, not included within or provided for by the tender. If it succeeded in the action, the fund thus tendered would be insufficient to pay the amount of the judgment to which it was entitled.

"The amount due cannot be the subject of controversy in an interpleader suit, and this difference between the debt claimed by the defendant, and the sum which the plaintiff is willing to pay, presents an insuperable objection to its prosecution." Baltimore & Ohio R. Co. v. Arthur, 90 N. Y. 234.

By its answer and interpleader the appellant bank sought to relieve itself from the liability which appellee was seeking to impose upon it by its complaint, by paying into court the amount of the fund, to the extent of its liability, and by bringing into court another claimant of the fund, compel the two claimants to litigate their rights at their own expense, and thus protect itself from all vexation and responsibility. But, in order for it to interplead, there must be no question as to the amount due, and where, as in this case, the interpleader raised a question as to the amount which was the subject of the interpleader, by contradicting and taking issue with appellee's complaint on this question, the interpleader was demurrable.

"The rule is that when a question is raised as to the amount which is the subject of the interpleader such question prevents the right of the interpleader. The mere fact of there being a dispute as to the amount of the fund is always fatal to the bill. Moore v. Usher, 7 Simon's Rep. 384; Diplock v. Hammond, 28 Eng. L. & Eq. 202; President, etc., v. Bangs, 2 Paige (N. Y.) 570; Chamberlain v. O'Connor, 8 How. Prac. (N. Y.) 245." Clasner v. Weisberg, 43 Mo. App. 214.

Here appellant was asking that it be permitted to step out of the litigation, and that plaintiff be enjoined from prosecuting its suit against it, and this, in spite of the fact that appellee was claiming as against it a liability which it did not admit.

In the case of Helene v. Corn Exchange Bank, et al.,

96 App. Div. 392, 89 N. Y. Supp. 310, almost the same
identical question was presented. In that case the trial
court sustained the motion for interpleader and permitted
the bank to pay into court the amount of the deposit, with
accrued interest thereon only to the time of demand, but
did not require the payment of the interest accruing as a
matter of law after the demand made. The Court say:
"The difficulty with the present order lies in the fact that
the bank is not required to protect Wells to the full extent
of his claim. If, when he made his demand upon the bank
for the payment of the money, he was entitled thereto, the
bank was in duty bound to pay it to him, and by its re-
fusal to pay it subjected itself to the payment of interest
until it should comply with the demand. The judgment
which Wells demands in his complaint is for the amount of
the fund on deposit, with interest thereon from the 30th
day of January, 1904, and, if entitled to the money, he is
entitled to interest thereon as well as the principal, not as a
matter of discretion, but as a matter of law. Mansfield
v. New York Cent. & H. R. R. Co., 114 N. Y. 331, 21 N.
E. 735, 1037, 4 L. R. A. 566. By the order of interpleader
the bank is discharged upon paying over and depositing
with the chamberlain of the city of New York the sum on
deposit, $304.80, and no more. If Wells succeeds in the
action, the fund thus directed to be deposited will be in-
sufficient to pay the amount of the judgment to which he
is entitled ,or to pay the amount which he was entitled to
receive at the time the order directing the interpleader
and the payment was made. The bank cannot be dis-
charged from liability without paying the sum which the
party is entitled to recover at the time when the order for
interpleader is granted. This it has not been required to
do." See, also, Bridesburg Mfg. Co.'s Appeal, 106 Pa.
275.

No error was committed in sustaining the demurrer to
the answer and interpleader; but, even if the demurrer
had been erroneously sustained, appellant waived its
interpleader when it answered to the merits. The gen-
eral doctrine is that interpleader lies, "where two or
more persons claim the same thing, under different titles,

or in separate interests, from another person, who, not claiming any title or interest therein, and not knowing to which of the claimants he ought of right to render the duty claimed, or to deliver the property claimed, is either molested by an action or actions brought against him, or fears he may suffer injury, from the conflicting claims of the parties against him. He therefore applies to a court of equity to protect him, not only from being compelled to pay or deliver the thing claimed, to both claimants, but also from the vexation attending upon suits, which are, or possibly may be, instituted against him." 2 Story's Equity Jur., sec. 806; Burton v. Black, 32 Ga. 53.

"It is * * * * of the essence of an interpleader suit that the" plaintiff shall be and continue "entirely indifferent between the conflicting claims" (11 Ency. Pl. & Pr. 455), and, "not only must he be disinterested when he brings his bill, but he must continue to be disinterested—his position must be one of 'continuous impartiality.'" (Wing, Adm'r, v. Spaulding, et al., 64 Vt. 83, 23 Atl. 615.) "All the text-writers agree that the first essential of a bill of interpleader is that the complainant must be a mere naked stakeholder without any interest in the fund, and without any controversy of his own to be settled in the cause" (Bridesburg Mfg. Co. Appeal, supra), and "an interpleader is allowed for the protection of a defendant who admits that he has the subject of the action, and makes no claim to it himself and is ready and willing to pay or dispose of it as the court may direct, and says that a third party without collusion claims it. He cannot take issue with the plaintiff, and at the same time have the benefit of an interpleader. The two are inconsistent, and he must elect between them. He cannot have both. By filing his answer, the defendant in error waived and abandoned his interpleader." Johnson v. Oliver, 51 Ohio St 6, 36 N. E. 458. In this case, after the demurrer had been sustained to its interpleader, the appellant bank, instead of standing upon its interpleader, asked leave to answer or further plead, and, pursuant to the leave granted it, laid aside the impartial attitude assumed in its interpleader and took up the cudgel for the board of regents.

By its answer, it said in effect that the plaintiff had no right, title, or interest in or to the fund; denied that it was the owner thereof, or that it had any claim whatever upon the deposit; and alleged that the fund was the property of the intervening defendant and that it held the same subject to its order. When the appellant bank elected to litigate with the plaintiff, the question of its right to the fund, and departed from its impartial attitude, theretofore assumed in its interpleader, it waived and abandoned its interpleader and cannot, in view of that fact, question the propriety of the court's ruling thereon.

Appellant's next contention is that upon the appointment of the new board of regents, June 11, 1912, Vincent B. May ceased to be a member of the board of regents, and for the same reason ceased to be its secretary and treasurer or to have any power as such; his sole duty being to turn over the funds to his successor.

As to the first proposition it is sufficient to say that there is nothing in the record to show that the board of regents appointed June 11th qualified by taking the oath of office prescribed in section 1 of article XX of the Constitution, and it certainly could not be contended that the mere appointment or election of an official, without his qualification, would oust an incumbent from office. Appellants cite the cases of Conklin v. Cunningham, 7 N. M. 445, 38 Pac. 170, and Eldodt v. Territory, 10 N. M. 141, 61 Pac. 105, as sustaining the proposition that "the appointment of an officer by the Governor is complete on delivery of the commission, and gives the appointee prima facie title to the office," but an examination of these cases will show that in each instance the officer demanding the office had qualified for the same, by giving bond where one was required and taking the oath of office. There is nothing in the record to show that the new board of regents attempted to act officially on any matter until July 5, 1912, or that the members thereof qualified as such before that date. But as we view the matter, it is immaterial as to the time of the qualification of the new board, for, in view of the provisions of section 3574, C. L. 1897, the treasurer of the board would still continue as

such until the election and qualification of his successor, notwithstanding the fact that he had ceased to be a member of the board. This section provides for the election of a secretary and treasurer, and other officials, and continues, "all other officers so elected shall hold their offices until their successors are duly elected and qualified," thus clearly providing against a vacancy in office. It is true, the secretary and treasurer, under the statute, must be, when elected, a member of the board of regents, but that his right to hold until the appointment and qualification of his successor is not dependent upon his continuing to be a member of the board is clear, otherwise the legislature would not have provided for his continuance in office until his successor was elected and qualified. The purpose of this provision was to guard against a vacancy in the office. Even without the statutory provision he would be continued in office by virtue of section 2, art. XX, of the Constitution, which provides: "Every officer, unless removed, shall hold his office until his successor has duly qualified." Under this provision there can be no doubt as to his right to hold the office until his successor has qualified. In this case the newly elected treasurer did not qualify until some time in August; consequently May was the treasurer of the board of regents on July 5th, when he transferred the certificate of deposit in question. Even if it should be held that May had no right to hold the office of treasurer, after he ceased to be a member of the board of regents, his right to the office could not be questioned collaterally; it could be done only in a direct proceeding for that purpose. Case, et al., v. State ex rel. Mann, 69 Ind. 46. He would be an officer de facto, and his acts, as it respects third persons, would be valid. McGregor v. Balch, 14 Vt. 428, 39 Am. Dec. 231.

But it is contended that May, even while secretary and treasurer, had no power to transfer the certificate of deposit in question, because section 3553, C. L. 1897, provides all· "the disbursements and expenditures of all moneys provided for by this act, shall be vested in a board of five regents," and by section 3556 it is provided "the board of regents shall direct the disposition of any moneys

belonging to or appropriated to the Agricultural College and Experiment Station established by this act;" but it is not contended in this case that the board of regents had directed the deposit of the money in this case originally with the Bank of Commerce, or that it had ever attempted to provide for its disposition.

Section 3574, C. L. 1897, provides: "The person so elected as secretary and treasurer shall, before entering upon the discharge of his duties as such, execute a good and sufficient bond to the Territory of New Mexico, with two or more sufficient sureties, residents of this Territory, in the penal sum of not less than twenty thousand dollars, conditioned for the faithful performance of his duties as such secretary and treasurer, and that he will faithfully account for and pay over to the person or persons entitled thereto all moneys which shall come into his hands as such officer," etc.

In the absence of any direction from the board of regents, assuming for the sake of argument that the board had the power to direct and control the disposition, deposit or investment of the funds in the hands of the treasurer, it could hardly be contended that it was not the duty of the treasurer to safely preserve and keep such funds. This being true, he could deposit such funds in any bank he saw fit, or keep them in his own possession, liable of course at all times under his bond "to account for and pay over to the person or persons entitled thereto" such moneys. Suppose that he should, in the absence of direction, deposit such funds in an insolvent bank and a loss should occur, would he not be liable nevertheless? Again, suppose he had distributed the funds among several banks, and he expected to be called upon by his successor, within the near future to turn over to him the moneys in his hands, would he not have the power to assemble the funds, to procure the actual cash, in order that he might turn it over to his successor? In the present case, May could have been in an anomalous situation, should appellant's contention be sound, if he had been required to account to his successor on the 5th day of July, and the incoming official had refused to accept as cash the certificate of deposit in ques-

tion. The new treasurer had the right to demand that the actual cash should be turned over to him. Now, if May did not have the authority to withdraw the money from the First National Bank of Albuquerque, or to indorse the cer-tificate of deposit, it would have been impossible for him to produce the money.

The funds in question were placed in May's hands by the Territorial officials. He took them under his official bond. He became absolutely responsible for these moneys, and so long as he accounted for the same and paid the money over to the person or persons entitled thereto; as provided in his bond, he could deposit the fund with any bank or banks he desired. Maloy v. Board of Commission-ers of Bernalillo County, 10 N. M. 638, 62 Pac. 1106, 52 L. R. A. 126. In the absence of direction from the board, assuming its power to direct, May alone had the right to select a place of deposit. The fact that he deposited the money on time deposit, at 5 per cent interest, does not alter the case. The College received the benefit of the interest accumulations. The certificate was payable to May. It was issued for his protection, so that he could demand the money when he desired, and as evidence of the deposit. He had the right to transfer over the certificate of deposit to the appellee, and the appellee was lawfully entitled to the money represented by such certificate at the time it demanded payment from the appellant bank. This being true, and payment having been refused, it was entitled to interest thereon, under the statute at the rate of 6 per centum per annum. The newly appointed treas-urer, who had not qualified, had no right to interfere in the matter. When he was lawfully entitled to call the old treasurer to account, he could require him to pay over to him the actual cash represented by such certificate, or such as had not been lawfully paid out by May. In this case it is not contended that May was acting in bad faith, or that he was insolvent, or that his sureties were not am-ply able to respond for the full amount of the bond, or that any attempt was made to defraud the College.

The board of regents joined in the appeal and adopted the assignments of error and brief filed by the appellant

bank. What we have said has disposed of all the questions raised in the case, and further discussion as to the rights of the board is unnecessary.

What might have become a serious question in this case, had it been raised, is as to the right of the board of regents or the secretary and treasurer to the posession and control of moneys derived from the sale of lands granted to the Territory and confirmed to the State in view of the provisions of section 10 of the Enabling Act, which, it might be argued, makes the State Treasurer the custodian of such fund, and charges him with the duty, subject to the approval of the Governor and Secretary of State, of investing the same in safe interest-bearing securities.

Finding no error in the record, the judgment of the lower court is affirmed, and it is so ordered.